UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WARREN REED TENSLEY

     Petitioner,

v.                                    CASE NO. 8:11-cv-1245-T-23MAP

SECRETARY, Department of Corrections,

     Respondent.

_____/

## ORDER

     Warren Reed Tensley petitions for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state convictions for sale or delivery of cocaine and possession of cocaine.  Tensley alleges three grounds of trial court error and three grounds of ineffective assistance of trial counsel.  Numerous exhibits ("Respondent's Exhibit __") support the response.  (Doc. 8)

## I.    EXHAUSTION AND PROCEDURAL BAR

### Grounds One, Five, and Six

     In ground one Tensley contends that the trial judge committed fundamental error and violated the prohibition against double jeopardy by instructing the jury on both possession of cocaine and possession with intent to sell the same quantity of cocaine.  Tensley raised this issue on direct appeal but argued a violation of state law — not federal law — and cited only state cases.  In ground five Tensley contends (1) that the trial judge committed an *ex post facto* violation "by using [a] new standard

jury instruction on principals, which enabled the state to establish guilt without proving two elements contained in the standard instruction in effect when [Tensley]'s alleged crime[s] w[ere] committed," (2) that the trial judge violated Tensley's due process right by giving the newer principal instruction and, (3) by not instructing the jury on either the law of "controlled buys" or the defense of entrapment.  In ground six Tensley relies on *Shelton v. Fla. Sec'y, Dep't of Corr.*, 802 F. Supp. 2d 1289 (M.D. Fla. 2011), to challenge the federal constitutionality of Section 893.13, Florida Statutes.[1]  Tensely presented neither ground five nor ground six to the state court on direct appeal or in a post-conviction motion.  The respondent argues that grounds one, five, and six are procedurally barred from federal review.

The failure to present a federal claim to the state court renders the claim unexhausted.  Under 28 U.S.C. § 2254(b)(1)(A) and (b)(1)(C), before a federal court may grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion.  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first

---

[1]  In *Shelton* the district court held unconstitutional Section 893.13, Florida Statues, and granted federal habeas relief. After Tensley filed his federal petition and supplemental memorandum the Eleventh Circuit reversed the district court's decision in *Shelton*. *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348, 1355–56 (11th Cir. 2012). The Florida Supreme Court subsequently held Section 893.13, Florida Statues, constitutional. *State v. Adkins*, 96 So. 3d 412, 423 (Fla. 2012).

properly raised the issue in the state courts.") (citations omitted).  To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'"  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record."  *McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005) (quotations and citations omitted).

Tensley's failure to present to the state court the federal claims alleged in grounds one, five, and six deprived the state court of a "full and fair opportunity to

resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845.  *See also Anderson v. Harless*, 459 U.S. 4, 5–6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.").  Consequently, the exhaustion requirement remains unsatisfied, *Henry*, 513 U.S. at 365, rendering grounds one, five, and six procedurally defaulted.

Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension.  *United States v. Frady*, 456 U.S. 152 (1982).  In other words, a petition must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892.

Without a showing of cause or prejudice, a petitioner may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct

a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000);

*Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). A fundamental miscarriage of justice

occurs in an extraordinary case if a constitutional violation has probably resulted in

the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298,

327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's

"actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To

meet this standard, a petitioner must show a reasonable likelihood of acquittal absent

the constitutional error. *Schlup*, 513 U.S. at 327.

Tensley fails to demonstrate cause and prejudice excusing the default of each

federal claim. *Carpenter*, 529 U.S. at 451; *Carrier*, 477 U.S. at 495–96. He neither

alleges nor shows that the fundamental miscarriage of justice exception applies.

*Henderson*, 353 F.3d at 892. Because Tensley fails to proffer specific facts showing an

exception to procedural default, grounds one,[2] five, and six are procedurally barred

from federal review.

## II.   **MERITS**

Tensley's remaining grounds are exhausted and entitled to review on the

merits.

---

[2] Tensley argued on direct appeal that "[i]ncluding the inapplicable definition of possession in the sale or delivery count was tantamount to instructing the jury that [Tensley] was charged with two counts of possession of the same quantum of contraband, in violation of [Tensley]'s constitutional guarantee against double jeopardy . . . ." (Respondent's Exhibit 2, p. 3) Even assuming that the general reference to a "constitutional guarantee" was sufficient to allege a federal (not state) constitutional violation, ground one warrants no relief. Under Florida law the sale or delivery of cocaine and possession of cocaine are not the same offense; each crime includes an element that the other does not. *See* Fla. Stat. §§ 893.13(1)(a), 893.13(6)(a); *Tyler v. State*, 107 So. 3d 547 (Fla. 1st DCA 2013); *State v. McCloud*, 577 So. 2d 939, 940–41 (Fla. 1991) (*per curiam*). Consequently, no double jeopardy violation resulted.

**Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a
> writ of habeas corpus with respect to claims adjudicated on the
> merits in state court. Under § 2254(d)(1), the writ may issue only
> if one of the following two conditions is satisfied — the state-
> court adjudication resulted in a decision that (1) "was contrary to
> . . . clearly established Federal Law, as determined by the
> Supreme Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal law,
> as determined by the Supreme Court of the United States." Under
> the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court

> decides a case differently than this Court has on a set of
> materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if
> the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 526 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess

the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766 (2010). *See also*

*Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to

meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt' . . . .") (citations

omitted).

        In a *per curiam* decision without a written opinion the state appellate court

on direct appeal affirmed Tensley's convictions and sentences.  (Respondent's

Exhibit 5)  The state appellate court's *per curiam* affirmance warrants deference under

Section 2254(d)(1) because "the summary nature of a state court's decision does not

lessen the deference that it is due."  *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.),

*reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v.*

*Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 131 S. Ct. at 784-85 ("When a federal

claim has been presented to a state court and the state court has denied relief, it may

be presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law procedural principles to the contrary.").

        Review of the state court decision is limited to the record that was before the

state court.

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim
> on the merits. Section 2254(d)(1) refers, in the past tense, to a
> state-court adjudication that "resulted in" a decision that was
> contrary to, or "involved" an unreasonable application of,
> established law. This backward-looking language requires an
> examination of the state-court decision at the time it was made.
> It follows that the record under review is limited to the record in
> existence at that same time, i.e., the record before the state
> court.

*Pinholster*, 131 S. Ct. at 1398.  Tensley bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## Standard for Ineffective Assistance of Counsel

Tensley claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Tensley must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  466 U.S. at 691–92.  To meet this burden, Tensley must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690–91.  Tensley cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Tensley must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Sustaining a claim of ineffective assistance

of counsel is very difficult because "[t]he standards created by *Strickland* and §

2254(d) are both 'highly deferential,' and when the two apply in tandem, review is

'doubly' so." *Richter*, 131 S. Ct. at 788.  *See also Pinholster*, 131 S. Ct. at 1410 (A

petitioner must overcome this "'doubly deferential' standard of *Strickland* and the

AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)

("Double deference is doubly difficult for a petitioner to overcome, and it will be a

rare case in which an ineffective assistance of counsel claim that was denied on the

merits in state court is found to merit relief in a federal habeas proceeding.").

**Ground Two**

      Prosecutor Scott Rosenwasser represented the state in Tensley's case.  During

*voir dire*, venireman Julia King disclosed that she was an administrator at a local law

firm and may have previously spoken to Rosenwasser by telephone in the course of

her employment (Respondent's Exhibit 1, Vol. II, pp. 27–28, 34, 56–59):

| | |
|---|---|
| Court: | Members of the panel, do you know the lawyers? Do you know the defendant? Do you know any of the witnesses? Are you related by blood or marriage to any of those individuals or have you had social or business dealings with any of those individuals? . . . . Ms. King, who do you know? |
| [King]: | I think I've talked to Scott [Rosenwasser] on the phone before but I don't know. But I'm in business. |
| Court: | All right. Do you feel that that in any way will affect your ability to be fair and impartial? |
| [King]: | No. |
| . . . . | |

| | |
|---|---|
| Court: | Thank you. I would like you now to . . . introduce yourselves one at a time to the attorneys. |

. . . .

| | |
|---|---|
| [King]: | My name is Julia King. I'm an administrator at a law firm and I am a consultant for [a] nutritionist. And in my spare time I like to read and study healing medicines. |
| Court: | Which law firm is that? |
| [King]: | Richard Watts. |
| Court: | He does quite a bit of business in this building, doesn't he? |
| [King]: | Yes. |

. . . .

| | |
|---|---|
| Rosenwasser: | Anyone else in addition to Mr. Watts that you know? I would imagine several attorneys in the area. |
| [King]: | I know several. |
| Rosenwasser: | Anything about your knowledge of the system that would affect your ability to be a fair and impartial juror? |
| [King]: | No. |
| Rosenwasser: | Okay. Now, are you the office manager for Mr. Watts? |
| [King]: | (Indicating). |
| Rosenwasser: | Does he discuss his cases with you? |
| [King]: | Sometimes. |
| Rosenwasser: | Is there anything about Mr. Watts being a — at times he is a criminal defense attorney. Anything about your relationship with him |

|  | being a criminal defense attorney that would affect your ability to be fair and impartial in this case? |
|---|---|
| [King]: | No. |
| Rosenwasser: | So let's say, for example, that the case is proved beyond a reasonable doubt. So you think — you know, if you went back to Mr. Watts and said, you know, I sat on this jury and it was proved beyond a reasonable doubt and we did convict him, that you would feel, you know, bad about that since he is a criminal defense attorney? |
| [King]: | No. |
| Rosenwasser: | Okay. So that in any way wouldn't affect your ability to be fair towards the State and for the defense? |
| [King]: | (Indicating). |

After *voir dire* concluded, both attorneys exercised for-cause challenges and peremptory challenges resulting in the selection of five jurors.  After further discussion between the trial judge and counsel,[3] the final juror was selected.

_____

[3]  The trial judge and the attorneys discussed selection of the final juror (Respondent's Exhibit 1, Vol. II, pp. 92–93):

| Court: | Well, that leaves us with five so far. I can order another panel up and, for all I care, we can go into tomorrow. So anybody want to come off of a peremptory? State's used 4. Defense has used 6. |
|---|---|
| [Counsel]: | Can we borrow one of yours? |
| [Prosecutor]: | I will come off of [venireman number] 15 [whom Tensley alleges is King]. |
| . . . . | |
| [Counsel]: | I accept. |

(continued...)

Tensley alleges that "[a]fter [King] stated that she and the prosecutor had, in fact, spoken, [counsel][4] failed to object or move for a mistrial" and "failed to request a new jury panel." (Doc. 5, p. 8)  Tensley claims that counsel's errors resulted in a denial of his right to a fair trial.

The state post-conviction court rejected this claim in Tensley's Rule 3.850 motion:

> Prospective juror Julia King stated that she believed she had a conversation with the prosecutor prior to trial. Defendant claims that counsel was ineffective for failing to pursue possible improprieties by the potential juror and for failing to bring the matter to the court's attention.

> Additionally, he points to the fact that once five jurors had been accepted, the court offered to get a new panel of prospective jurors in order to seat a sixth jury member. However, the State and defense counsel agreed to seat Ms. King as the sixth jury member. Defendant claims this was error.

> Ms. King was the administrator of the law firm for criminal defense attorney Richard Watts. She believed she may have spoken to the prosecutor while acting in her capacity as administrator of the law firm. Ms. King stated that she knew several attorneys but that would not affect her ability to be a fair and impartial juror.

> In his amended motion Defendant alleges that counsel should have asked more in-depth questions to Ms. King in order to determine if she should have been excluded from the jury. Defendant has failed to demonstrate any reason to excuse this

---

[3](...continued)
      [Prosecutor]:   I accept.

      Court:        Okay. We've got a jury. We don't need an alternate. Thank you.

[4] Tensely states in his memorandum of law that "the court failed to object or move for a mistrial." (Doc. 5, p. 8) Read in context, Tensely's reference to "the court" rather than "counsel" appears a scrivener's error. Tensley states in the federal petition that he raised this claim in his Rule 3.850 motion as a claim of ineffective assistance of counsel and not a claim of trial court error.

> juror for cause or for defense counsel to have used a challenge
> to strike Ms. King from the panel. Defendant has failed to meet
> the second prong of the *Strickland* test because he cannot
> demonstrate prejudice. This claim is denied.

(Respondent's Exhibit 13, p. 3) (court's record citations omitted)

"The constitutional standard of fairness requires that the criminally accused have a panel of impartial, indifferent jurors." *Murphy v. Fla.*, 421 U.S. 794, 799 (1975). "The purpose of voir dire is to ascertain whether potential jurors can render a verdict solely on the basis of evidence presented and the charge of the trial court." *Wilcox v. Ford*, 813 F.2d 1140, 1150 (11th Cir. 1987). *See also J.E.B. v. Ala. ex rel. T.B.*, 511 U.S. 127, 143–44 (1994) ("Voir dire provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently."); *Mu'Min v. Va.*, 500 U.S. 415, 431 (1991) ("Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges."). "Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).

Effective assistance of counsel is required during voir dire. *Brown v. Jones*, 255 F.3d 1273, 1278–79 (11th Cir. 2001). Counsel's questions and tactics during *voir dire* are a matter of trial strategy. *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it

permeates the entire trial with obvious unfairness.'" *Teague v. Scott*, 60 F.3d 1167,

1172 (5th Cir. 1995).  Because empaneled jurors are presumed impartial, *see Smith v.

Phillips*, 455 U.S. 209, 215 (1982), to satisfy *Strickland*'s prejudice requirement Tensley

must show that the juror selection process produced a juror that was actually biased

against him.  *Hughes,* 258 F.3d at 458.  *See also Rogers v. McMullen*, 673 F.2d 1185,

1189 (11th Cir. 1982) (finding no violation of a defendant's Sixth Amendment right

to a fair and impartial jury absent a showing that a jury member hearing the case was

actually biased against him).

Tensley fails to cite any record evidence establishing that King lacked

the ability to be fair and impartial at trial.  Tensely neither shows actual bias nor

establishes that, if trial counsel had successfully stricken King, the outcome of

the trial would have been different.  *Strickland*, 466 U.S. at 694.  Tensley fails to

establish that the state post-conviction court either unreasonably applied *Strickland*

or unreasonably determined the facts in rejecting ground two.[5]  28 U.S.C.

§ 2254(d)(1), (2).

---

[5] Tensley presented ground two to the state post-conviction court in both his original and amended Rule 3.850 motions (Respondent's Exhibits 10, 12) as a claim of ineffective assistance of trial counsel. Tensley states in his memorandum of law (Doc. 5, p. 9) that he "now raises this claim as a constitutional violation." To the extent that Tensley asserts a federal fair trial claim, the claim is unexhausted because he did not present the claim to the state court either on direct appeal or in his Rule 3.850 motions. Notwithstanding the procedural default, the claim is meritless. Tensley shows neither that juror King engaged in misconduct nor that her possible familiarity with the prosecutor resulted in actual bias against Tensely. Consequently, a fair trial claim warrants no relief. *Rogers*, 673 F.2d at 1189.

**Ground Three**

The prosecutor introduced into evidence at trial two aerial photographs of the location of the drug transaction.  (Respondent's Exhibit 1, Vol. III, pp. 126–27)  Trial counsel raised no objection.  Tensley contends that his trial counsel rendered ineffective assistance by not challenging the admission of the photographs.

The state post-conviction court rejected this ground in Tensley's Rule 3.850 motion:

> Defendant claims that counsel was ineffective for failing to object to the introduction into evidence of State's exhibit one and exhibit 2, aerial photographs of the intersection where the offense occurred. He claims that this was hearsay evidence concerning where the offense occurred. This claim is without merit. The aerial photographs were properly admitted into evidence. There were no grounds upon which to base a hearsay objection.

(Respondent's Exhibit 13, pp. 3–4) (court's record citation omitted)

While Tensley's ineffective assistance of counsel claim is of federal constitutional dimension, the basis for the claim is a challenge to the admissibility of evidence under state evidentiary rules.  Both the state post-conviction court in rejecting Tensley's ground of ineffective assistance of counsel and the state district court of appeal in affirming that rejection have answered the question of what would have happened if counsel had objected at trial to the admission of the photographs. The state courts' interpretation of state law is afforded deference.  *See Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008)[6] ("Although an ineffective

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

assistance of counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] --- the objection would have been overruled . . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection."). Because the photographs were admissible under state evidentiary rules, Tensley establishes neither deficient performance nor resulting prejudice from counsel's alleged error. *Strickland*, 466 U.S. at 691–92. Tensley fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this ground. 28 U.S.C. § 2254(d)(1), (2).

**Ground Four**

Tensley contends that his trial counsel rendered ineffective assistance by not objecting during the prosecutor's rebuttal closing argument when the prosecutor repeatedly implored the jury to use "common sense" in evaluating the case.[7]  The

---

[7] The following exchange occurred during the prosecutor's rebuttal closing argument:

> [Prosecutor]:  Common sense, what does — what does common sense tell you in this case? . . . . Now, the question was asked, well, where did the money go? Well, this is what we know. We know the defendant tried on two occasions to get cocaine fronted to him, basically that someone would have to give him the cocaine and he would have to bring the cocaine back. And Detective Riba would then pay him the $20 and the defendant would bring it back to somebody.
>
> Or you know what? We just don't know where it would go. That's what common sense tells you. . . . Now, where did the money go? Well, we can all speculate or common sense tells us that the money may have gone to the person in the Hyundai. Do we know what the defendant got in return? We don't know what he got in return. Maybe it was a little something, something maybe —
>
> [Counsel]:  Judge, I think that the State is arguing something that's not even remotely in [the] testimony. He's far outreaching what he can, I think, argue in closing. I mean, he is talking about what — what — what the defendant might have done with the money or with the cocaine. There is no evidence to indicate that he did any of those things.
>
> Court:  Okay. Your objection is overruled.
>
> [Prosecutor]:  Thank you, Judge. So, you know, common sense tells you what happened. He exercised his constitutional right and we've met our burden of proof. And we've met it and he's guilty of both crimes as charged. Thank you.

(Respondent's Exhibit 1, Vol. III, pp. 205–08)

state post-conviction court rejected[8] this ground in Tensley's Rule 3.850 motion

because the record shows that counsel did, in fact, object during the prosecutor's

rebuttal argument.  (Respondent's Exhibit 1, Vol. III, pp. 207–08)  Tensley

acknowledges in his memorandum of law (Doc. 5, p. 12) "that counsel objected but

was overruled."   Consequently, he satisfies neither *Strickland's* deficient performance

requirement nor *Strickland's* prejudice requirement to support a claim of ineffective

assistance of counsel.  *Strickland*, 466 U.S. at 691–92.  The state post-conviction court

neither unreasonably applied *Strickland* nor unreasonably determined the facts in

rejecting this ground.[9]

     Accordingly, Tensley's petition for the writ of habeas corpus (Doc. 1) is

**DENIED**.  The clerk must enter a judgment against Tensley and close this action.

---

[8]  The state post-conviction court concluded (Respondent's Exhibit 13, p. 7) (court's record citation omitted):

> Defendant claims that he was prejudiced by the comment during closing argument when the prosecutor stated that common sense tells you what happened in the present case and the prosecutor speculated about events that occurred. Defendant does note that defense counsel objected to the statement. The court overruled the objection. Counsel was not ineffective as she objected to the statements.

[9]  Tensley cites in both his petition (Doc. 1, p. 9) and his memorandum of law (Doc. 5, p. 12) the "Caldwell Supreme Court decision that [the] prosecutor cannot make statements that diminish [the] jury's sense of responsibility."   To the extent that Tensely relies on *Caldwell v. Mississippi*, 472 U.S. 320 (1985), to support an independent claim of prosecutorial misconduct based upon the prosecutor's "common sense" argument, Tensley cannot obtain relief because he did not raise a *Caldwell* claim in the state court. Consequently, the claim is unexhausted and procedurally defaulted. Tensley demonstrates neither cause and prejudice excusing the default nor shows that the fundamental miscarriage of justice exception applies. *Henderson*, 353 F.3d at 892. Because Tensley fails to proffer specific facts showing an exception to procedural default, his *Caldwell* claim is procedurally barred from federal review. Notwithstanding the procedural bar, Tensley fails to establish a meritorious *Caldwell* claim.

**DENIAL OF BOTH A
CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Tensley is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Aumuller must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Tensley is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Tensley must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on May 18, 2015.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE